UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VISUAL SEMICONDUCTOR, INC., <br><br> Appellant, <br> v. <br><br> STREAM TV NETWORKS, INC., *et al.*, <br><br> Debtors-in-Posess. <br><br> and <br><br> WILLIAM HOMONY, *et al.*, <br><br> Trustees. | Bankruptcy Appeal <br><br> Civil No. 2:24-cv-06397-JMG |
| VISUAL SEMICONDUCTOR, INC., <br><br> Appellant, <br> v. <br><br> STREAM TV NETWORKS, INC., *et al.*, <br><br> Debtors-in-Posess. <br><br> and <br><br> WILLIAM HOMONY, *et al.*, <br><br> Trustees. | Civil No. 2:24-cv-06498-JMG |
| VISUAL SEMICONDUCTOR, INC., *et al.*, <br><br> Appellants, <br> v. <br><br> STREAM TV NETWORKS, INC., *et al.*, <br><br> Debtors-in-Posess. <br><br> and <br><br> WILLIAM HOMONY, *et al.*, <br><br> Trustees. | Civil No. 2:24-cv-06617-JMG <br><br> Appeal Related to Case No. 23-10763-AMC in the United States Bankruptcy Court for the Eastern District of Pennsylvania |

- - 1 - -

- - 2 - -

## APPELLANT'S REPLY BRIEF ON APPEAL

R. Adam Swick (Admitted *Pro Hac Vice*)
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX 78701
Telephone: (737) 999-7103
Facsimile: (512) 623-6701
Email: adam.swick@akerman.com

Donald N. David, SBN: 304846
Mark S. Lichtenstein (Admitted *Pro Hac Vice*)
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
       mark.lichtenstein@akerman.com

John H. Thompson *(Admitted Pro Hac Vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile: (202) 393-5959
Email: john.thompson@akerman.com

Leif M Clark (Admitted *Pro Hac Vice*)
Leif M Clark Consulting PLLC
1105 Bonner
Houston, TX 77007
Telephone: (210) 663-5183
Email: lmclark@leifmclark.com

*Attorneys for Appellant Visual Semiconductor, Inc.*

## OPENING STATEMENT

"It is wrong always everywhere, and for anyone to believe anything on insufficient evidence."

"The danger to society is not merely that it should believe wrong things,… but that it should…lose the habit of testing things and inquiring into them." – William Kingdon Clifford

Appellee has spilt much ink in its papers in the bankruptcy case below and now in its Response engaged in ad hominem attacks against VSI, Rembrandt, and the character of StreamTV's former CEO, all because each had the temerity of trying to protect their rights and interests from others bent upon denying them of those rights and interests.  One may only assume that Appellee's objective was to fix this Court's perspective on their individual and collective actions as somehow untoward.  All would have been served better in this case were there as much effort to discover the evidence before the litigants in the case and to build a record of it.  The StreamTV bankruptcy case has been plagued with far too much acrimony, to be sure.  But it has also suffered from far to little investigation, discovery, and due process.  The section 363 sale that culminated at the end of StreamTV's nearly two year chapter 11 case was a miscarriage of justice that could only result from an evidentiary record that was far too long on rhetoric and far too short on evidence.

## STATEMENT OF THE CASE

[Need to draft summary statement of case – include FN on defined terms][1]

"It is wrong always everywhere, and for anyone to believe anything on insufficient evidence."

"The danger to society is not merely that it should believe wrong things,… but that it should…lose the habit of testing things and inquiring into them." – William Kingdon Clifford

---

[1] Capitalized terms not expressly defined herein shall have the meaning ascribed to them in Appellant Rembrandt 3D Holding Ltd's Opening Brief on Appeal filed at 2:24-cv-02727-JMG, ECF No. 18.

Appellee has spilt much ink in its papers in the bankruptcy case below and now in its Response engaged in ad hominem attacks against VSI, Rembrandt, and the character of StreamTV's former CEO, all because each had the temerity of trying to protect their rights and interests from others bent upon denying them of those rights and interests. One may only assume that Appellee's objective was to fix this Court's perspective on their individual and collective actions as somehow untoward. All would have been served better in this case were there as much effort to discover the evidence before the litigants in the case and to build a record of it. The StreamTV

## ARGUMENTS

### I. The Appeals Are Not Statutorily Moot Under Section 363(m)

The Trustee overstates Third Circuit law with respect to section 363(m), minimizes the misconduct of the 363 buyer, and mischaracterizes the record with respect to Appellant's efforts and timing in seeking a stay pending appeal. A review of Third Circuit case law reveals that Appellee's overly simplistic "seller always wins" analysis of the law fails to appreciate dispositive elements of the statutory language and a more nuanced application of the Code section. Trustee's cavalier characterization of SeeCubic, Inc. as a "good faith buyer" diminishes the its misconduct and thoroughly-conflicted positioning throughout the bankruptcy case and sale process (where it was on both sides of the sale transaction). And notwithstanding Appellee's claims to the contrary, VSI's efforts to seek a stay pending appeal were timely and appropriate under the circumstances.

Section 363(m) is undeniably a powerful tool in the arsenal of a debtor, a trustee, and a bankruptcy court, and that is precisely why it should be wielded with good judgment and fairness – not caprice and avarice. But as powerful as section 363(m) may be, it is not without its limits. Third Circuit's jurisprudence makes clear that 363(m) does not automatically moot an appeal in the manner that Appellee seeks to prescribe. *In re Philadelphia Newspapers, LLC,* 690 F.3d 161

(3d Cir. 2012) and *In re Semcrude, L.P.,* 728 F.3d 314 (3d Cir. 2013). Rather, an appellate court can still review aspects of a bankruptcy even after it has closed, provide that the relief sought does not fully reverse the sale from a "**good faith purchaser**." (emphasis added). In contrast with several other circuit courts, the Third Circuit takes the more narrow view that some of a 363 sale's terms may be reviewed on appeal without jeopardizing the sale's validity. In order to determine whether an appeal is statutorily moot under 363(m), one must first look review the text of the statute. Section 363(m) provides that:

"**(m)** The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property **in good faith**, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." (emphasis added) 363(m).

Thus, for a 363(m) statutory mootness analysis in the first question is whether the property being sold in the 363 sale was sold in good faith, and that determination is predicated largely, if not exclusively, on whether the purchaser is found to have acted in good faith based upon the evidentiary record. *Archer-Daniels-Midland Co. v. Country Visions Cooperative*, 29 F.4th 956 (7th Cir. 2022). If the factual record demonstrates that either the sale transaction or the purchaser lacked good faith, then the entirety of the sale is subject to reversal on appeal. Id. If however, the record demonstrates that the 363 sale of property occurred in good faith, it is still possible under Third Circuit law that a some portions of the sale may be reviewed on appeal and modified consistent with the demands of justice. Id.

Here, notwithstanding the Trustee's insistence to the contrary, SeeCubic. Inc.'s position and conduct rendered it incapable of being conferred with the status of a "good faith purchaser" under

section 363(m). As set forth in detail in Appellant's opening brief, SeeCubic appropriated and continued to possess the StreamTV Debtor's property from mid-2020 through the bankruptcy proceedings and up to and after the sale, notwithstanding multiple court orders to turnover the property, the imposition of the automatic stay, and the issuance of a TRO by the Bankruptcy Court. Indeed, as VSI attempted to make clear at multiple sale-related hearings, as the director in charge of SeeCubic, BV's operation in the Netherlands, defacto holder of StreamTV Debtor assets, and proposed stalking horse bidder for the StreamTV assets, SeeCubic, Inc.'s CEO, Shadron Stastney, was effectively operating on both sides of the Trustee's purported "arm's length" 363 sale transaction. And because the Trustee never took possession of and marshaled StreamTV's assets, Mr. Stastney and SeeCubic, Inc. effectively controlled the sale process. In short, the 363 sale process operated like a highly-choreographed theatrical production permitting the Trustee to confer title to Mr. Stastney for StreamTV assets that he already possessed. Moreover, the Bankruptcy Court failed to conduct an evidentiary hearing or accept any evidence onto the record at the Bidding Procedures hearing and rejected VSI's efforts to submit evidence for the record at the Sale Hearing to rebut the Trustee's contention that SeeCubic,Inc. was a good faith purchaser. Accordingly, it is not possible, on this record, for the Bankruptcy Court to have made the finding that SeeCubic, Inc. was a good faith purchaser for purposes of section 363(m).

Even if SeeCubic, Inc. could be deemed to be a good faith purchaser, Third Circuit law permits an appellate court to review and modify specific terms and provisions of a 363 sale, notwithstanding section 363(m). In this case, such review and modification would be just and appropriate. Notwithstanding multiple requests from Rembrandt that the Trustee be required to remove its intellectual property from the physical and software assets scheduled to be sold as part of the StreamTV 363 asset sale, neither the Trustee nor the Bankruptcy Court agreed. Instead, the

- 4 -

Trustee argued (and the Bankruptcy Court agreed) that the sale did not contemplate the sale of any assets in which Rembrandt's IP was incorporated.  In short, no IP harm, no IP foul.  But the Trustee's Asset Purchase Agreement and its schedules make clear that multiple items containing Rembrandt's intellectual property were conveyed as party of the sale – including software on a California based server and 3D TV monitors already in the possession of Mr. Stastney and SeeCubic, Inc.  Accordingly, even if SeeCubic, Inc. is deemed to be a good faith purchaser for purposes of 363(m), this Court could fashion appropriate relief to do what the Bankruptcy Court failed to do – order injunctive relief to require SeeCubic, Inc. to remove and turnover all of Rembrandt's intellectual property along with a compliance inspection to be completed to Rembrandt's satisfaction.

Finally, the Trustee's suggestion that VSI filed a untimely motion for stay pending appeal is just wrong.  VSI initially sought a stay pending appeal in connection with its mandamus petition, as the Trustee acknowledges.  VSI then filed a timely filing motion for a stay pending appeal, which was set for hearing on the normal calendar schedule in light of both the District Court's denial of the relief, the fact that the sale closing had not occurred, and based upon the Bankruptcy Court's multiple denials of expedited relief with respect to prior motions practice.  Most importantly, VSI recognized that the disposition of the assets the were the subject of the sale had remained exaction the same – specifically, in the hands of SeeCubic, Inc., where they had been for over four years.  Accordingly, VSI's efforts to seek a stay pending appeal were timely, reasonable, and appropriate under the circumstances.

## II. <u>VSI Has Standing to Pursue Its Appeals</u>

The Trustee's argument that VSI lacks standing is disingenuous at best.  And the Trustee's statements that "VSI holds no monetary claims against either of the Debtor estates" and that "the Bankruptcy Court's orders approving the Settlement Agreement, Bidding Procedures, or Sale had

no impact whatsoever on VSI" are knowingly and manifestly false.[2] .. In its brief, the Trustee goes to great lengths to cite extensive case law for a proposition with which no party has disagreed and which is also completely inapposite to this case. Trustee's argument might be an interesting academic undertaking if VSI were *only* an equity holder or investor. But VSI is a creditor – specifically an administrative expense creditor - and the Trustee knows it first hand, because he directed the payments that made VSI an administrative expense claimant.

There can be little dispute that the holder of an administrative expense claim is a creditor imbued with the right to pursue an appeal from a bankruptcy court order. [cite to third circuit case law conferring standing upon an administrative expense creditor]. The Court need only examine the litany of cases cited by the Trustee to reach the indisputable conclusion that, if VSI is a creditor, it maintains standing to pursue these appeals. The facts demonstrate that VSI is such a creditor.

Shortly after the Bankruptcy Court appointed the Trustee on January 12, 2024, the Trustee engaged in discussions with VSI about providing short-term funding for Stream's expenses. During those discussions, the Trustee learned about VSI's ongoing payments for Stream's expenses (including certain payroll expenses) and directed VSI to make several payments. For example, on January 16, 2024, the Chapter 11 Trustee instructed VSI to "Please proceed to fund the [Stream] contractor payments for 1/16." SA-01 proper citation **Exhibit A-1**. On February 5, 2024, the Chapter 11 Trustee instructed Nicole Maneen to pay Stream's employees from VSI funds. SA-16 On February 16, 2024, the Chapter 11 Trustee directed VSI to fund the payroll. On February 21, 2024, the Chapter 11 Trustee once again asked Nicole Maneen to have VSI pay Stream's payroll. SA-20 On March 8, 2024, the Chapter 11 Trustee once again asks VSI to pay Stream's payroll:

---

[2] Pages 26-29 of Appellee's Answering Brief [E.D. Pa 24-cv-6498, Doc No. 18].

- 6 -

"Hi Nicole, I apologize I thought it was communicated that absent an order from the bankruptcy court that I was not going to accept *any additional money* from VSI.  I will return the wire and ask that VSI directly pay these [Stream] contractors until further notice." SA-24 and SA-26. On March 26, 2024, Ms. Maneen informed the Chapter 11 Trustee that VSI had paid Stream's insurance. SA-28]  On March 26, 2024, the Chapter 11 Trustee was still accepting VSI payments to Stream employees and directed Suby Joseph, as a Stream employee, to file information for an intellectual property license. SA-035.   In total VSI paid over $932,000 to  fund the Stream estates' administrative expenses[3], much of it upon the express authorization of the Trustee.

Based upon the communications and expenses outlined above, it is clear that VSI holds an administrative claim under section 503(b) of the Bankruptcy Code for funds paid to the Debtor's estate pursuant to the Trustee's authorization and direction.

The list of example communications and exhibits sited in the foregoing paragraphs make clear that  the Trustee's representation regarding VSI's creditor status is plainly false.   This misrepresentation  is particularly egregious in light of the Trustee's personal involvement with and approval of multiple payments.  These misstatement are also troubling because the Trustee's own claims-related deadlines have not yet passed; the deadline to file a motion for an administrative expense claims is March 12, 2025,[4] and the deadline to file a proof of claim is May 15, 2025 - 56 and 120 days after the Trustee's Appellee's Response was filed.  So, while VSI may not have filed its administrative expense claim prior to the submission of Appellee's Response and no one expects the Trustee to be a mind reader, the evidence outlined above and in the appended exhibits makes abundantly clear that the Trustee should have known that VSI held an administrative expense

---

[3] SA-003
[4] Bankruptcy Docket No. 948.

- 7 -

80279465;2

claim. And thus, the misrepresentations and baseless arguments in Appellee's Response are as perplexing as they are frustrating.

Despite the Trustee's assertions, VSI has since filed both its administrative claim and motion for allowance of administrative claim, and both are timely filed in advance of their respective deadlines. Accordingly, the entirety of Trustee's argument with respect to VSI's alleged lack of standing is moot.

### III.     Appellees' Arguments Regarding Record Citations Are Not Supported

The Trustee argues that the "Appellants' Arguments (plural) are not supported by record citations," Page 7 of Appellee's Answering Brief [E.D. Pa 2:24-cv-6498, Doc No. 17] and then proceeds to cite exactly zero examples of VSI's failure to provide proper citation to the record. In an apparent loss for the irony of painting with a broad brush, the Trustee criticizes Appellants' briefs (plural) for allegedly containing "minimal citation to the record," and then castigates "Appellants (plural) for "mak[ing] sweeping contentions concerning various bankruptcy proceedings…and the alleged misconduct by Hawk parties, SeeCubic, and the Trustee without *meaningful* citation to the record." (emphasis added). Indeed, the Trustee's use of the word "meaningful" is in the forgoing sentence revealing. If the Trustee intended to make the point about the alleged absence of citations in a truly convincing manner, it would have done so without the use of the word "meaningful" – but that may not have met the burden for candor before this Court. Appellant's Opening Brief [E.D. Pa 2:24-cv-6498, Doc No. 16].

If the Trustee's assertion that VSI's arguments are unsupported by citations to the record is to be taken seriously, than he must show his work and identify the specific examples of VSI's missing or errant citations. Failing such a showing, Trustee's argument on "unsupported" record

- 8 -

citations is wholly without support, and thus should be treated with the same remedy urged by Appellee – the Court should decline to consider it.

## CONCLUSION

For the foregoing reasons, the Appellants respectfully requests that the Court (i) vacate or reverse the 9019 Order; (ii) vacate or reverse the Bid Procedure Order; and (iii) reverse the Sale Order.

Dated: March 4, 2025

**AKERMAN LLP**

By: */s/ R. Adam Swick*
R. Adam Swick
500 West 5th Street, Suite 1210
Austin, TX 78701
Telephone: (737) 999-7103
Facsimile: (512) 623-6701
Email: adam.swick@akerman.com

Donald N. David, SBN: 304846
Mark S. Lichtenstein
AKERMAN LLLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
          mark.lichtenstein@akerman.com

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile: (202) 393-5959
Email: john.thompson@akerman.com

*Attorneys for Appellant Visual Semiconductor, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies the following:

1. The foregoing Appellant's *Reply Brief on Appeal* (the "**Brief**") complies with: (i) the page limit provided in the *Scheduling Order* of December 18, 2024, at Docket No. 8, because, excluding the parts of the document exempted by the *Policies and Procedures* of Judge John M. Gallagher, it contains 10 pages; and (ii) the typeface and type-style requirements provided in the *Policies and* Procedures, Section B.2, because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman with 12 point font.

2. On March 4, 2025, I electronically filed the Brief with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the appellate CM/ECF system. The text of the electronic version of the Brief is identical to the text of the hard copies that will be provided.

Dated: March 4, 2025

*/s/ Adam Swick*  
R. Adam Swick